UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JENNIFER L. SANTORO, | NO. C12-662-RSL-JPD |
| Plaintiff, | |
| v. | REPORT AND RECOMMENDATION |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | |
| Defendant. | |

Plaintiff Jennifer L. Santoro appeals the final decision of the Commissioner of the Social Security Administration ("Commissioner") which denied her application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-83f, after a hearing before an administrative law judge ("ALJ"). For the reasons set forth below, the Court recommends that the Commissioner's decision be AFFIRMED.

I. FACTS AND PROCEDURAL HISTORY

At the time of the administrative hearing, plaintiff was a twenty-six year old woman with an eighth-grade education. Administrative Record ("AR") at 39, 43-44. Plaintiff also received special education assistance while she was in school, and was eventually put into an alternative school for children with difficulties. AR at 39, 44. Her past work experience

REPORT AND RECOMMENDATION - 1

includes part-time employment as a fast food worker at McDonald's and as a retail clothing store clerk. AR at 40, 87.

On July 11, 2008, plaintiff filed a claim for SSI payments, alleging a disability onset date of May 5, 2005. AR at 104, 207, 251. Plaintiff asserts that she is disabled due to pain in her lower back, right hip, left shoulder, left foot, as well as depression, anxiety, Attention Deficit Hyperactivity Disorder ("ADHD"), fibromyalgia, asthma, ringing in her ears, and migraines. AR at 40-41, 82, 256.

The Commissioner denied plaintiff's claim initially and on reconsideration. AR at 111-14, 121-26. Plaintiff requested a hearing, which took place on December 14, 2010. AR at 37-103. On January 20, 2011, the ALJ issued a decision finding plaintiff not disabled and denied benefits based on her finding that plaintiff could perform a specific job existing in significant numbers in the national economy. AR at 18-34.

On February 2, 2012, the Appeals Council issued a "Notice of Appeals Council Action" denying plaintiff's request for review. AR at 7-12. On May 3, 2012, the Appeals Council issued a second notice vacating its previous decision "to consider additional information," but again finding "no reason under our rules to review the Administrative Law Judge's decision." AR at 1-6. The Appeals Council's May 3, 2012 notice made the ALJ's ruling the "final decision" of the Commissioner as that term is defined by 42 U.S.C. § 405(g). On April 23, 2012, plaintiff timely filed the present action challenging the Commissioner's decision. Dkt. 3.

II.     JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

REPORT AND RECOMMENDATION - 2

III. STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)). The Court may find that this occurs when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id*. at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that erroneously rejected evidence may be credited when all three elements are met).

## IV. EVALUATING DISABILITY

As the claimant, Ms. Santoro bears the burden of proving that she is disabled within the meaning of the Social Security Act (the "Act"). *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal citations omitted). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled under the Act only if her impairments are of such severity that she is unable to do her previous work, and cannot, considering her age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden of proof during steps one through four. At step five, the burden shifts to the Commissioner. *Id.* If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps. Step one asks whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b).[1] If she is, disability benefits are denied. If she is not, the Commissioner proceeds to step two. At step two, the claimant must establish that she has one or more medically severe impairments, or combination of impairments, that limit her physical or mental ability to do basic work activities. If the claimant does not have such impairments,

---

[1] Substantial gainful activity is work activity that is both substantial, i.e., involves significant physical and/or mental activities, and gainful, i.e., performed for profit. 20 C.F.R. § 404.1572.

she is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations. 20 C.F.R. §§ 404.1520(d), 416.920(d). A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled. *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine whether she can still perform that work. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is able to perform her past relevant work, she is not disabled; if the opposite is true, then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100. If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

## V.   DECISION BELOW

On January 20, 2011, the ALJ issued a decision finding the following:

1. The claimant has not engaged in substantial gainful activity since July 11, 2008, the alleged application date.

2. The claimant has the following severe impairments: degenerative disc disease, cervical strain, and obesity.

3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

REPORT AND RECOMMENDATION - 5

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR416.967(b) as reflected by the claimant's ability to lift and carry 20 pounds occasionally and 10 pounds frequently with no restrictions in her ability to sit, stand, or walk. Additionally, she is able to perform all postural activities on an occasional basis except she cannot climb ladders, ropes and scaffolds. On a non-exertional basis, the claimant is able to understand, remember and carry out simple repetitive one-to-two step tasks; she can work in coordination with a group of 1 to 5 coworkers; she can work superficially with the public, but she needs hands-on demonstration to initially learn new tasks.

5. The claimant is unable to perform any past relevant work.

6. The claimant was born on XXXXX, 1984 and was 24 years old, which is defined as a younger individual age 18-49, on the date the application was filed.[2]

7. The claimant has a limited education and is able to communicate in English.

8. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

10. The claimant has not been under a disability, as defined in the Social Security Act, from July 11, 2008, the date the application was filed.

AR at 20-29.

VI.   ISSUES ON APPEAL

The principal issues on appeal are:

1. Did the ALJ err in evaluating the medical opinions of Evan Freedman, Ph.D., and Mark Heilbrunn, M.D.?

2. Did the ALJ properly evaluate the lay witness statement submitted by plaintiff's mother?

---

[2] The actual date is deleted in accordance with Local Rule CR 5.2, W.D. Washington.

REPORT AND RECOMMENDATION - 6

3.      Did the ALJ pose a proper hypothetical question to the vocational expert ("VE") during the hearing?

Dkt. 14 at 2.

## VII.    DISCUSSION

A.    <u>The ALJ Did Not Err in Evaluating the Medical Opinion Evidence</u>

*1.    Standards for Reviewing Medical Evidence*

As a matter of law, more weight is given to a treating physician's opinion than to that of a non-treating physician because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989); *see also Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). A treating physician's opinion, however, is not necessarily conclusive as to either a physical condition or the ultimate issue of disability, and can be rejected, whether or not that opinion is contradicted. *Magallanes*, 881 F.2d at 751. If an ALJ rejects the opinion of a treating or examining physician, the ALJ must give clear and convincing reasons for doing so if the opinion is not contradicted by other evidence, and specific and legitimate reasons if it is. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1988). "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* (citing *Magallanes*, 881 F.2d at 751). The ALJ must do more than merely state his conclusions. "He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id.* (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)). Such conclusions must at all times be supported by substantial evidence. *Reddick*, 157 F.3d at 725.

The opinions of examining physicians are to be given more weight than non-examining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Like treating physicians, the

1  uncontradicted opinions of examining physicians may not be rejected without clear and

2  convincing evidence. *Id.* An ALJ may reject the controverted opinions of an examining

3  physician only by providing specific and legitimate reasons that are supported by the record.

4  *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005).

5  Opinions from non-examining medical sources are to be given less weight than treating

6  or examining doctors. *Lester*, 81 F.3d at 831. However, an ALJ must always evaluate the

7  opinions from such sources and may not simply ignore them. In other words, an ALJ must

8  evaluate the opinion of a non-examining source and explain the weight given to it. Social

9  Security Ruling ("SSR") 96-6p, 1996 WL 374180, at *2.[3] Although an ALJ generally gives

10  more weight to an examining doctor's opinion than to a non-examining doctor's opinion, a

11  non-examining doctor's opinion may nonetheless constitute substantial evidence if it is

12  consistent with other independent evidence in the record. *Thomas v. Barnhart*, 278 F.3d 947,

13  957 (9th Cir. 2002); *Orn*, 495 F.3d at 632-33.

14              2.      *The ALJ Did Not Reject Dr. Freedman's Opinion*

15  Department of Social and Health Services ("DSHS") examining psychologist Evan B.

16  Freedman, Ph.D., conducted a psychological evaluation of plaintiff on November 19, 2007 and

17  January 22, 2008. AR at 556-72.[4] Dr. Freedman administered the Weschler Adult Intelligence

18  Scale – Third Scale ("WAIS-III") and Personality Assessment Inventory ("PAI"), in addition

---

[3] Social Security Rulings do not have the force of law. Nevertheless, they "constitute Social Security Administration ("SSA") interpretations of the statute it administers and of its own regulations," and are binding on all SSA adjudicators. 20 C.F.R. § 402.35(b); *Holohan v. Massanari*, 246 F.3d 1195, 1203 n.1 (9th Cir. 2001). Accordingly, such rulings are given deference by the courts "unless they are plainly erroneous or inconsistent with the Act or regulations." *Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989).

[4] Specifically, Jayme Fergoda, M.S.W., conducted a psychological evaluation of the plaintiff under the supervision Dr. Freedman. AR at 556-72. However, because the report was signed by both clinicians, AR at 572, the Court will discuss the report as reflecting Dr. Freedman's opinion.

REPORT AND RECOMMENDATION - 8

to his clinical interview and mental status exam.  AR at 557.  Dr. Freedman found that "testing of Mrs. Santoro's intellectual function indicates that her overall cognitive ability, as estimated by the Full Scale IQ, is in the Low Average range . . . Compared with her peers, Mrs. Santoro may experience some difficulty in holding information in mind to perform a specific task. Difficulties with working memory may make the processing of complex information more time-consuming for Mrs. Santoro, drain her mental energies more quickly, and perhaps result in more frequent errors on a variety of learning tasks."  AR at 568.  In addition, "a relative weakness in processing speed may make the task of comprehending novel information more time consuming and difficult for Mrs. Santoro."  AR at 568.  Dr. Freedman opined that "Mrs. Santoro's prognosis for recovery is fair if she participates in treatment; her prognosis is guarded to poor if she does not participate in treatment."  AR at 569.

Dr. Freedman then provided a list of eleven separate "recommendations" for plaintiff's treatment, which ranged from obtaining new eyeglasses and "seek[ing] medical treatment related to her asthma, chronic back pain, migraines, gastroesophageal reflux, disease, and thyroid condition," to "consider[ing] a Smoking Cessation program and an appropriate exercise program[.]"  AR at 569-71.  One of these recommendations provided that plaintiff's low average intellectual abilities and "challenges in working memory and processing speed" needed to "be taken into consideration by her treatment providers and potential employers. Instructors need to be sure they have and keep Mrs. Santoro's attention throughout instruction due to her high level of distractibility.  She should have information provided for her in written form and/or be given extra time to write down information."  AR at 570.

Plaintiff contends that the ALJ did not state in the hearing decision the evidentiary weight she gave to Dr. Freedman's opinion regarding plaintiff's functional limitations.  Dkt. 16 at 2.  Furthermore, plaintiff argues that the ALJ's failure to discuss Dr. Freedman's opinion

REPORT AND RECOMMENDATION - 9

1   was not harmless error, because the ALJ's RFC assessment does "not take into account these
2   severe functional limitations" assessed by Dr. Freedman, the only doctor to administer
3   "objective psychological tests to the plaintiff. Since the ALJ did not mention Dr. Freedman's
4   report, she did not state what evidentiary weight she gave his opinion, or give clear and
5   convincing reasons for rejecting the doctor's opinion." Dkt. 14 at 12.

6        The Commissioner responds that "the ALJ's references [to] Dr. Freedman's report and
7   conclusions throughout the decision reflected proper consideration of the report as part of
8   Plaintiff's longitudinal mental health treatment. For instance, the ALJ mentioned Ms. Fergoda
9   and Dr. Freedman specifically in her evaluation of the severity of Plaintiff's PTSD." Dkt. 15
10  at 6 (citing AR at 21). Similarly, the Commissioner points out that "the ALJ also found that
11  Plaintiff's somatoform disorder was a medically determinable impairment because Dr.
12  Freedman made the diagnosis. In addition, the ALJ noted that Plaintiff's results on the
13  Personality Assessment Inventory administered by Ms. Fergoda indicated that Plaintiff might
14  not have answered the questions in a forthright manner." *Id*. (citing AR at 21, 25). Thus, the
15  Commissioner asserts that "the ALJ properly considered Dr. Freedman's opinion in the context
16  of Plaintiff's longitudinal mental health history but relied on the opinion of psychiatrist David
17  Sandvik, M.D., who actually examined Plaintiff during the adjudicated period . . . to evaluate
18  Plaintiff's functioning during the relevant time frame." *Id.* (citing AR at 25, 435-39).

19       In response to plaintiff's contention that Dr. Freeman assessed numerous functional
20  limitations, such as a need to have information written down, the Commissioner asserts that
21  "plaintiff's argument misconstrues recommendations with actual limitations or requirements.
22  Dr. Freedman's report concludes with a series of recommendations that would maximize
23  Plaintiff's chances of succeeding in a job." *Id*. at 7 (citing AR at 568-71). For example, the
24  Commissioner points to Dr. Freedman's recommendation that plaintiff "should use a daily

REPORT AND RECOMMENDATION - 10

1  planner to organize and to prioritize tasks for the day." *Id*. (citing AR at 570). The

2  Commissioner asserts that "these are not mandatory, minimum requirements for Plaintiff to be

3  employable . . . Rather, Dr. Freedman provided a long list of recommendations that would

4  create an ideal work environment for Plaintiff. Medical opinions that are recommendations,

5  not imperatives, need not necessarily be adopted by ALJ." *Id.* (citing *Carmickle v. Comm'r,*

6  *Soc. Sec. Admin.,* 533 F.3d 1155, 1165 (9th Cir. 2007)).

7        Plaintiff responds that she is not arguing that "the ALJ must consider Dr. Freedman's

8  recommendations to accommodate plaintiff's mental functional limitations," but that the ALJ

9  failed to indicate what weight was afforded to Dr. Freedman's opinion regarding plaintiff's

10 mental functional limitations. Dkt. 16 at 3. Specifically, plaintiff argues that the mental

11 functional limitations assessed by Dr. Freedman include a reduced ability to concentrate,

12 confusion, distractibility, difficulty concentrating, difficulty retaining information to perform a

13 specific tasks, and requiring extra time to comprehend novel information. *See id.*

14 Furthermore, plaintiff argues that the ALJ erred in formulating plaintiff's RFC assessment,

15 because the ALJ did not include the mental functional limitations assessed by Dr. Freedman

16 and "ignored her duty to state the weight she gave the expert opinion of Dr. Freeman (sic)."

17 *Id*. at 4.

18       The ALJ in this case implicitly credited Dr. Freedman's diagnoses in several places in

19 her written decision, but did not expressly assign any particular weight to his report. AR at

20 567. Plaintiff's argument that the ALJ's failure to discuss the weight afforded to Dr.

21 Freedman's opinions constituted reversible error is not well taken, however, as Dr. Freedman's

22 report does not conclude with a clear assessment of mental functional limitations, but with a

23 series of broad "recommendations" that "may benefit" the plaintiff in the future. AR at 569-

24 71. As argued by the Commissioner, an ALJ does not err by failing to include a physician's

REPORT AND RECOMMENDATION - 11

recommendations, as opposed to functional limitations, in the RFC assessment. *See Carmickle,* 533 F.3d at 1165 (providing that the ALJ did not err in failing to address a physician's recommendation that a plaintiff use a reclinable desk chair while working, because it was not stated as an imperative).

Significantly, the Court finds that Dr. Freedman's recommendations for plaintiff's "potential employers" do not appear inconsistent with the ALJ's RFC assessment. For example, the ALJ's RFC assessment in this case limited plaintiff to "simple repetitive one-to-two step tasks," working with a group of only one to five workers, only superficial exposure to the public, and a clear requirement that plaintiff "needs hand-on demonstration to initially learn new tasks." AR at 23. At the conclusion of his report, Dr. Freeman recommended that plaintiff's "potential employers" take into consideration plaintiff's "intellectual challenges" in "working memory and processing speed" when providing her with instructions, and then made several specific recommendations about how this could be accomplished. For example, Dr. Freedman recommended that plaintiff's instructors "keep her attention throughout instruction due to her high level of distractibility," provide information "in written form and/or be given extra time to write down information," prioritize information and instructions for task completion, and provide extra time for written tasks. AR at 570.[5] An ALJ "need not discuss all evidence presented" to her, but "must explain why significant probative evidence *has been rejected.*" *Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (emphasis added). Although the ALJ in this case failed to indicate what weight she afforded to Dr. Freedman's opinions, it does not appear that she rejected Dr. Freedman's report.

---

[5] In her reply brief, the plaintiff appears to concede that the ALJ is not required to consider all of "Dr. Freeman's (sic) recommendations to accommodate plaintiff's mental functional limitations." Dkt. 16 at 3.

Thus, plaintiff has not demonstrated that the ALJ's written RFC assessment and step-five findings failed to account for Dr. Freedman's opinions. Accordingly, no reversible error by the ALJ has been established.

        *3.*     *The ALJ Did Not Err By Affording Dr. Heilbrunn's Opinion Regarding Plaintiff's Lifting and Carrying Restrictions "Little Weight"*

Mark Heilbrunn, M.D., performed a DDS consultative physical evaluation of the plaintiff on October 28, 2008, for the purpose of evaluating plaintiff's physical functional capacity. AR at 458-63. In the functional assessment section of his report, Dr. Heilbrunn stated that plaintiff was "able to lift and carry as measured in the examination, a maximum of 5 pounds in either hand on a frequent basis. She was unable to lift and carry 10 pounds." AR at 462. Dr. Heilbrunn's report also found that plaintiff's grip strength, upper extremity strength, and lower extremity strength all tested at 5 on a scale of 1 to 5. AR at 27, 461. In addition, Dr. Heilbrunn found plaintiff's range of motion was unlimited, and she had no muscle atrophy. AR at 27, 461-62.

Eight days later, on November 5, 2008, a social security case evaluator, Randy Hill, reviewed the record in this case and found plaintiff limited to occasionally lifting and/or carrying 10 pounds, or frequently lifting and/or carrying less than 10 pounds. AR at 464-71. He further opined that "the claimant is limited to light work activity." AR at 471.

On February 18, 2009, DDS medical consultant Dr. Hoskins also reviewed the record. AR at 464-71, 479. Dr. Hoskins "affirmed" the DDS functional evaluation dated November 5, 2008. AR at 479. With respect to Dr. Heilbrunn's evaluation, however, Dr. Hoskins added that the "CE notes 5/5 motor strength throughout, no atrophy, then proceeds to rate to 10/<10 on the basis of alleged inability to lift > 5# at the examination. Inconsistent. I would have

rated to full light work; however, that is a judgment call and would not alter the decision." AR at 479.

In her written decision, the ALJ found that plaintiff has the RFC to perform "light work" as defined in 20 C.F.R. § 416.967(b), "as reflected by the claimant's ability to lift and carry 20 pounds occasionally and 10 pounds frequently with no restrictions in her ability to sit, stand, or walk." AR at 23. The ALJ also gave great weight to Dr. Hoskin's opinion that plaintiff could perform light work. AR at 27. With respect to plaintiff's ability to lift and carry, the ALJ found that "little weight is earned by the opinion expressed by Dr. Heilbrunn concerning restrictions in the claimant's RFC. For instance, in October 2008, he reported the claimant was limited to lifting and carrying 5 pounds frequently." AR at 27. The ALJ concluded that "these restrictions in terms of weight lifted . . . are disbelieved, based on Dr. Heilbrunn's own objective medical findings of the ability to do most range of motions maneuvers, normal sensation and normal muscle strength." AR at 27. Earlier in the opinion, the ALJ had also noted "on a physical basis, Mark Heilbrunn, M.D., found in October 2008 that the claimant was able to do most range of motion maneuvers, as well as balance adequately on either leg. She was observed to have normal station and gait, although the latter was short-strided. Her shoulders, elbows, wrists, hands, legs, arms, knees, feet, and toes all had normal findings." AR at 24.

Plaintiff contends that "DDS must have valued Dr. Heilbrunn's opinion as they sent plaintiff to the consultative examination by the doctor." Dkt. 14 at 14. Although the ALJ rejected Dr. Heilbrunn's opinion based on inconsistency with Dr. Heilbrunn's "own objective medical findings of the ability to do most range of motion maneuvers, normal sensation and normal muscle strength," plaintiff argues that "the claimant's lifting ability was 'measured in the examination' and the sitting/standing/walking limitations were 'manifested in the

REPORT AND RECOMMENDATION - 14

examination.'" *Id*. at 14-15 (citing AR at 462). Finally, plaintiff asserts that "even if the medical opinion of Dr. Heilbrunn was properly rejected, the functional assessments by DDS do not support the ALJ's finding that plaintiff can lift and/or carry 20 pounds occasionally, and 10 pounds frequently" because although Dr. Hoskins opined that he "would have rated full light work" he also felt the RFC was "a judgment call and would not alter the decision." *Id*. at 15-16.

The Commissioner responds that the ALJ properly rejected the lifting and carrying limitations assessed by Dr. Heilbrunn "because it was inconsistent with Dr. Heilbrunn's own examination results." Dkt. 15 at 77 (citing AR at 27). The Commissioner asserts that a contradiction between a doctor's assessment of a claimant's abilities and that doctor's clinical notes, observations, and opinions of the claimant's capabilities is a clear and convincing reason for not relying on the doctor's opinion. *Id.* at 8 (citing *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005); *Morgan v. Comm'r of Soc. Sec. Admin*. 169 F.3d 595, 603 (9th Cir. 1999)). Moreover, determining that a doctor's medical opinion is contradicted by his or her own notes, observations, and opinions is "a permissible determination within the ALJ's province." *Id.* (citing *Bayliss*, 427 F.3d at 1216). With respect to plaintiff's argument that Dr. Hoskins ostensibly affirmed Dr. Heilbrunn's evaluation, the Commissioner argues that Dr. Hoskins' statement "I would have rated to full light work" provided a basis for the ALJ to conclude that Dr. Hoskins' own opinion was that plaintiff could perform such work. *Id.* at 9.

The Court finds no error by the ALJ in evaluating Dr. Heilbrunn's opinion. Although Dr. Hoskins stated that he generally "affirmed" the prior DDS functional evaluation, he specifically noted that he would "would have rated to full light work" based upon his review of the record. AR at 479. In addition, Dr. Hoskins indicated that Dr. Heilbrunn's limitation to lifting and carrying less than 10 pounds, based upon lifting less than five pounds at the

REPORT AND RECOMMENDATION - 15

evaluation, is "inconsistent' with the rest of Dr. Heilbrunn's evaluation notes, which reflected "5/5 motor strength throughout, no atrophy." AR at 479. The ALJ rejected Dr. Heilbrunn's lifting and carrying restrictions based upon the same reasoning as Dr. Hoskins, and found Dr. Heilbrunn's lifting and carrying restrictions inconsistent with "Dr. Heilbrunn's own objective medical findings of the ability to do most range of motions maneuvers, normal sensation and normal muscle strength." AR at 27. As mentioned above, inconsistency between a physician's assessment of limitations, and his or her own notes, observations, and opinions is a clear and convincing reason to afford their opinion less weight. *See Bayliss*, 427 F.3d at 1216).

Finally, although Dr. Hoskins indicated that he thought his difference of opinion with Dr. Heilbrunn "would not alter the decision," it is solely the province of the ALJ to resolve conflicts in the medical evidence. The ALJ's finding that Dr. Heilbrunn's opinion was inconsistent with the objective medical evidence in the record was clear and convincing, and supported by substantial evidence in the record.

### B.   The ALJ Did Not Err in Evaluating Ms. King's Lay Witness Statements

On August 6, 2008, plaintiff's mother, Caroline Rose King, submitted a third party function report setting forth her opinions regarding how plaintiff's medical conditions limit her activities. Dkt. 271-78. Specifically, Ms. King indicated that she and her daughter spend "a lot of time together, we do many things together." AR at 271. With respect to plaintiff's daily activities, Ms. King indicated that plaintiff "does her best to take care of daughter, husband and her pets. Sometimes she has a lot of pain while doing this." AR at 271. Plaintiff's pets include two cats and one dog, and plaintiff "feeds them and trys (sic) her best to keep them groomed. Bending causes her much pain." AR at 272. With respect to plaintiff's pain, Ms. King indicated that plaintiff "can only stand for about 20 minutes, can't run and housework causes severe pain . . . . Standing in kitchen causes pain sometimes just cooking a meal wipes

her out for the day." AR at 272-73. Ms. King estimated that plaintiff "shops 1 or 2 times a week," although the plaintiff "likes her husband Tony to go – she can't carry the grocery bags." AR at 274. Finally, Ms. King commented that at the time she was completing the report, plaintiff was "also pregnant with 2nd child." AR at 278.

The ALJ noted that she had "considered the form completed by Carol King, claimant's mother, in August 2008 concerning the claimant's functional abilities. However, this document noted that the claimant took care of her husband, child and pets," and also "observed that the claimant engaged in such tasks as driving the car, grocery shopping and managing her finances." AR at 27. In addition, the ALJ found that "some of Ms. King's remarks appear to simply be a recounting of what the claimant told her. For instance, the allegation was made that the claimant could only stand for 20 minutes due to pain and that standing in the kitchen caused pain while cooking wiped her out for the rest of the day. Ms. King could not personally know that any of these allegations were true: they were simply what the claimant told her." AR at 27. For these reasons, the ALJ found that Ms. King's statement "does not establish any RFC more restrictive" than found by the ALJ. AR at 27.

In order to determine whether a claimant is disabled, an ALJ may consider lay-witness sources, such as testimony by nurse practitioners, physicians' assistants, and counselors, as well as "non-medical" sources, such as spouses, parents, siblings, and friends. *See* 20 C.F.R. § 404.1513(d). Such testimony regarding a claimant's symptoms or how an impairment affects his ability to work is competent evidence, and cannot be disregarded without comment. *Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993). If an ALJ chooses to discount testimony of a lay witness, he must provide "reasons that are germane to each witness," and may not simply categorically discredit the testimony. *Dodrill,* 12 F.3d at 919.

REPORT AND RECOMMENDATION - 17

1    Plaintiff contends that the ALJ did not provide reasons germane to Ms. King for
2  rejecting her testimony, and that the reasons were otherwise unsupported by the record. Dkt.
3  14 at 22. For example, plaintiff asserts that the ALJ "does not cite to any exhibit or record to
4  support her conclusion that Ms. King was only reciting what plaintiff told her. Both the
5  written testimony by Ms. King, and plaintiff's testimony at the hearing support the
6  determination that Ms. King was testifying to what she personally observed, and not relying on
7  what plaintiff told her." *Id.* Plaintiff also asserts that the ALJ failed to mention the aspects of
8  Ms. King's testimony which supported plaintiff's contention that she is limited to less than
9  light work. *Id*. at 20-21.

10    The Commissioner responds that "when, as here, the ALJ gives valid reasons for
11  rejecting a claimant's testimony and those reasons are equally relevant to the similar testimony
12  of lay witnesses, any error in failing to give reasons for discounting the lay witness testimony
13  is harmless." Dkt. 15 at 11 (citing *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012)).
14  Specifically, the Commissioner asserts that "Ms. King noted that Plaintiff was pregnant at the
15  time Ms. King completed her written statement." *Id.* Thus, "any error in the ALJ's discussion
16  of Ms. King's statement was harmless because the ALJ's reasons for rejecting Plaintiff's
17  testimony, such as the fact that her condition significantly improved after she gave birth to her
18  second child and was subsequently well-controlled with over-the-counter medications, applied
19  to Ms. King's statement as well." *Id*. at 12 (citing *Molina*, 674 F.3d at 1115).

20    The ALJ entered an adverse credibility determination in this case, based in part on
21  plaintiff's daily activities, which the ALJ considered to be inconsistent with plaintiff's alleged
22  limitations. AR at 25-26. This is a valid basis upon which to draw an adverse credibility
23  assessment, and plaintiff does not challenge the ALJ's credibility determination. Similarly, the
24  ALJ did not err by finding Ms. King's testimony regarding plaintiff's daily activities less than

REPORT AND RECOMMENDATION - 18

credible for the same reason: Ms. King's description of plaintiff's daily activities (which included caring for a young child, husband, dog, two cats, doing housework, driving a car, managing her finances, and shopping up to twice per week) was inconsistent with Ms. King's description of plaintiff's level of pain and limitations. AR at 27.

However, the Court finds that the ALJ's second "reason" for discounting Ms. King's opinion simply reflects the ALJ's conclusion that Ms. King was recounting plaintiff's subjective complaints, because there was no other way for Ms. King to personally know that her allegations were true. AR at 27. The ALJ's conclusion is not supported by the record. As noted above, Ms. King stated that she and her daughter spend "a lot of time together, we do many things together." AR at 271. As a result, Ms. King appears to have many opportunities to personally observe the plaintiff, and her limitations. Nevertheless, because the first reason given by the ALJ was an appropriate and germane reason for the ALJ's finding, the ALJ did not err in rejecting Ms. King's lay opinion.

C. The ALJ Posed a Proper Hypothetical Question to the VE During the Hearing

Finally, plaintiff contends that the ALJ's hypothetical to the VE did not include all of plaintiff's limitations, because it did not accurately reflect plaintiff's RFC. Dkt. 14 at 16-17. Plaintiff's claim is based upon her prior assignments of error regarding the ALJ's analysis of the medical opinions of Dr. Heilbrunn and Dr. Freedman. *See id.*

Hypothetical questions posed to the vocational expert must set out all the limitations and restrictions of the particular claimant. *Embrey v. Bowen,* 849 F.2d 418, 422 (9th Cir. 1988). The testimony of a VE "is valuable only to the extent that it is supported by medical evidence." *Sample v. Schweiker*, 694 F.2d 639, 644 (9th Cir. 1982). The VE's opinion about a claimant's RFC has no evidentiary value if the assumptions in the hypothetical are not supported by the record. *Embrey*, 849 F.2d at 422. However, an ALJ is only required to

present the VE with those limitations he finds to be credible and supported by the evidence. *Osenbrock v. Apfel*, 240 F.3d 1157, 1165–66 (9th Cir. 2001).

As discussed above, the Court has found that the ALJ did not err in evaluating the medical opinion evidence in this case. Similarly, the Court finds that the ALJ's hypothetical to the VE and findings at step five were free of legal error.

## VIII.   CONCLUSION

The role of this Court is limited. When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). It is possible to interpret the medical evidence as suggested by the plaintiff. However, this is not the only rational interpretation of the evidence. For the foregoing reasons, the Court recommends that this case be AFFIRMED, and that this case be DISMISSED with prejudice. A proposed order accompanies this Report and Recommendation.

DATED this 12th day of December, 2012.

*James P. Donohue*
———————————————
JAMES P. DONOHUE
United States Magistrate Judge